WILLIAM M. DODGE, Administrator of William Doherty, Plaintiff in Error, *v.* JACOB MACK, Defendant in Error.

### ERROR TO PEORIA.

The death of a defendant in execution, after its delivery to the sheriff, but before a levy under it by him, will not prevent that officer from proceeding to levy and sell.

THIS was a judgment by confession, upon a cognovit in vacation, December 22nd, 1858, on note for $173.69, dated November 11th, 1858, due at forty days, with exchange on New York, and ten per cent. interest.

Upon this judgment, execution was issued and placed in the hands of the sheriff.

A motion was filed March 29, 1859, to stay proceedings, set aside levy, etc., for the following reasons, to wit:

1. There is no legal judgment to warrant the execution.

2. William Doherty departed this life before any levy had been made.

3. The goods, chattels and property levied, were in the actual possession of the administrator, peacefully acquired before and at the time of the making of the levy.

4. The pleadings, record and proceedings are otherwise irregular and contrary to law, as appears by the same, and the affidavit filed, etc.

Profert was made of the letters of administration.

There was an affidavit of Wm. M. Dodge, plaintiff in error, showing that execution issued December 22nd, 1858, which was delivered to the sheriff on the next day, the 23rd.

That no levy was made during the life of the defendant.

That defendant died March 10th, 1859.

That sheriff went to defendant's store on the 14th March, 1859, and demanded possession, of the clerks, which was refused, and no levy made.

That affiant was appointed administrator March 19, 1859, and took actual and peaceful possession of the property in question.

That on March 21, 1859, the sheriff broke the outer door of the store, and seized and removed a portion of the goods.

The affidavit of John Bryner, the sheriff, was filed, stating that the facts stated in Dodge's affidavit are substantially true.

That the clerks claimed no personal interest in the goods.

That affiant offered to appoint one of the clerks custodian, but they refused.

That he ordered said clerks out of the store, but they refused to go.

That said clerks said that he, the sheriff, could have ingress and egress at his pleasure.

That after that day the store was kept closed and locked.

That he indorsed a levy on the 14th of March, and " *considered himself* as having a right to enter and take away the goods at any time thereafter."

On March 30, 1859, the motion to stay proceedings, set aside levy, etc., was overruled by Powell, Judge.

The errors assigned are as follows :

1. There is no legal judgment to warrant the issuing of the writ of execution.

2. The levy mentioned in said proceedings is illegal and void.

3. The property seized by the sheriff was the property of the administrator at the time it was taken, and so not subject to any execution against said William Doherty.

4.  The court below erred in overruling the motion to stay proceedings and set aside the levy.

5.  The record and proceedings aforesaid are otherwise irregular and contrary to the law of the land.

CHARLES C. BONNEY, for Plaintiff in Error.

BRYAN & STONE, for Defendant in Error.

WALKER, J.  At common law, goods and chattels were bound from the teste of the writ of *fieri facias*, but by our statute they are only bound from the delivery of the writ to the sheriff.  The question presented by this record is, whether the death of the defendant in execution, after such delivery, and before a levy, will prevent a levy and sale on the execution. In England, and many of the States of the Union, debts due by judgment, bond, or evidenced by a writing under seal, are regarded as of a higher dignity, than debts due by simple contract, and are given a preference in payment out of the estate of the deceased, over claims due by simple contract.  While under our statute of Wills, no such distinction is made on account of the form of the evidence of indebtedness.  It is true that our statute has divided them into classes, but bases the classification on different grounds.  The 115 section of the statute of Wills, divides all demands against the estate of deceased persons into four classes: "*First*, All funeral and other expenses attending the last sickness, shall compose the first class.  *Second*, All expense of proving the will, and taking out letters testamentary, or of administration, and settlement of the estate, and the physician's bill in the last illness of the deceased, shall compose the second class.  *Third*, When any executor, administrator or guardian, has received money as such, his executor or administrator shall pay out of his estate, the amount thus received and not accounted for, which shall compose the third class.  *Fourth*, All other debts and demands of whatever kind, without regard to quality or dignity, which shall be exhibited within two years from the granting of letters as aforesaid, shall compose the fourth and last class."  Thus it will be seen that whether a debt be due by judgment, bond, or simple contract, if resort is had to the mode prescribed by this statute for its payment, no preference is given.  Yet that there are cases where the debt may be collected without filing the claim, and sharing in the distribution of the assets, is undoubtedly true.  As where the creditor holds a mortgage on property of deceased, or where property has been pledged to secure the payment of the debt, or where there has been a recovery and an execution issued and levied in the life-

time of the deceased, in each of these cases, the property thus bound may be sold after the debtor's decease, in satisfaction of the debt. In each of these cases the creditor has acquired a lien, and the specific property has been appropriated either by the debtor, or by the law, for its satisfaction, and the death of the debtor can in nowise affect the rights of the creditor. Then does the lien acquired by a delivery of the *fieri facias* to the officer, bind the property at all events, or only upon the condition that a levy is made in the lifetime of the defendant?

The 8th sect., chap. 57, R. S. 1845, provides that no execution shall bind the goods and chattels of any person, against whom such writ shall issue, until it shall be delivered to the sheriff, or other officer, to be executed, and this section is a transcript of the 16th sec., 29 Car. 2, ch. 3, and under that statute the decisions of the English courts have been uniform, that, when execution has been delivered to the sheriff in the lifetime of the defendant, the officer may proceed to levy and satisfaction although the defendant may have died before any other steps were taken. *Parsons* v. *Gill,* 1 Ld. Ray. 965; *Odes* v. *Woodward,* 2 ib. 850; *Robinson* v. *Yonge,* 3 P. Wm's. 398; *Lord Kinnaird* v. *Lyall,* 7 *East,* 296; *Bragner* v. *Langmead,* 7 T. R. 20; 2 Bac. Abr., title Execution, C. 4. The construction given to the 29 Charles the 2d, is that the provision was intended to protect purchases, but in no way affected the rights of the parties to the judgment. And this was the obvious intention of the legislature in adopting the 8th section of the 57th chapter of the Revised Statutes. The lien created by the first section of that statute, on real estate, by the 37th section of the same chapter is not destroyed, but is only suspended, by the death of the defendant, for one year, when a sale may be had by giving notice to the executor or administrator in the manner prescribed.

The issuing of an execution and placing it in the hands of the proper officer, by which the lien on the property subject to execution is perfected, is the commencement of execution, which being an entire thing, may be completed by levy and sale after the defendant's death. And while it is true, that the executor or administrator takes the property as such, by grant of letters, it is subject to liens and in the same situation in which it was held by his testator or intestate. If it is incumbered by chattel mortgage, a pledge or other lien, he takes the title subject to such burthens. The death of the debtor does not discharge the lien. If a levy or sale were made before the death of the defendant, it will be conceded, that, the death of the defendant would not stop the officer from making a sale on the levy, or paying over the money realized on the sale, and yet the title to the property in the one case, or the money in the other, would

not be vested in the plaintiff. The title in the property or the money would vest in the executor or administrator by grant of letters, but it would be subject to the payment of the debt for which it had been levied. It would be in the custody of the law, until sold, and the money paid over, and the personal representative would be entitled to any balance. And as the lien had as fully attached under the execution, as if a levy had been made, or a mortgage given, or a pledge perfected, no reason is perceived why the 115th section of the statute of Wills should destroy this lien, and require the judgment to be satisfied out of the assets as other debts, any more than it does these other liens. And we cannot see why, if this lien created by a delivery of execution to the officer, is held to have been destroyed by the defendant's death, as being within the statute of Wills, that the same should not be held of all mortgage and other specific liens of every description, which would be manifestly against the legislative intention. That act undoubtedly did intend to prevent preferences of any other kind than those therein specified, if the creditor resorted to the probate court, for a satisfaction of his debt. That court could not regard such lien, but could only direct the payment as that of any other claim, falling within the same class, and the claimant would have to look to his other securities, to acquire a preference. The law favors the vigilant, and will not postpone the prior in right, even to a superior equity. But in this case, it is a question between the judgment creditor, and the administrator acting for the benefit of all the creditors and distributees, who have not a superior equity, and are subsequent in right, and have no right to defeat this creditor or even to postpone his remedy.

We are for these reasons, of the opinion that the levy of the execution on these goods was regular, and that the court below committed no error in refusing to quash the execution and levy, and that the judgment must be affirmed.

*Judgment affirmed.*