| 21 | 471 |
| 25 | 268 |
| 12a | 33 |
| 21 | 471 |
| 2d | 266 |
| f26 | 267 |

## THE BELMONT MINING AND MILLING COMPANY v. COSTIGAN ET AL.

**1. REFEREE, POWERS OF.**

It seems that where the order of reference is general, and the referee is given authority to determine issues of law and of fact, his powers are coextensive with those of the court; but where the order of reference is limited, the cause being referred with authority to take the testimony and report the same with findings of fact thereon at the next term of court, the order further fixing the time during which the parties should present their evidence, *held* that the referee had no power to grant a continuance; neither had he authority to pass upon a question as to the sufficiency of the complaint.

**2. AMENDMENTS—DISCRETION.**

An application to amend a pleading is addressed to the discretion of the trial court, the exercise of which will not be reviewed unless it has been abused; but under the circumstances of this case, it is *held* that in the denial of leave to amend there was an abuse of discretion.

**3. INJUNCTION—LIS PENDENS.**

Where the filing of a *lis pendens* notice in the office of the county clerk would be sufficient to protect the plaintiff's interest, an injunction should not be issued.

**4. INJUNCTION.**

Action by vendee for the rescission of a contract of sale of a mine on ground of vendor's fraud, to cancel certain promissory notes and a deed of trust purporting to have been given by plaintiff company to secure payment thereof, but fraudulently given, as it was alleged, and to restrain a sale under the deed of trust. *Held*, that it was not a case for injunctive relief.

**5. PLEADING—RESCISSION.**

In an action for the rescission of a contract of purchase on the ground of misrepresentations and deceit of the vendor, there must be alleged in the complaint the telling of an untruth, knowing it to be such, with intent to induce one to alter his condition, and that in consequence thereof he altered his condition, to his damage.

**6. MEASURE OF DAMAGES.**

Action by vendee of a mine to rescind the contract of sale. Counter-claim by vendors, who held notes of vendee secured by deed of trust on the property, for damages sustained by reason of a breach of vendee's contract to properly work the mine, alleging that the work was done so improperly as to injure the property. *Held*, that

until the vendors have the right of possession of, or buy in, the property, they can recover for such injuries only to the extent that their security is impaired.

## *Error to the District Court of San Miguel County.*

ON October 22, 1888, the plaintiff brought its action for the purpose of rescinding a contract of sale of the Belmont mine made to the plaintiff by the defendants, the cause of the action being that the defendants had been guilty of deceit, upon which the plaintiff to its injury relied in making the purchase.

Another object of the suit, or rather an incident thereof, was to obtain a decree of court canceling certain promissory notes and a certain trust deed given to secure the payment of the same, which said notes and trust deed purported to have been given by the company for part purchase price of said mine, but which, the plaintiff alleged, were fraudulently given.

Upon the filing of the complaint, a temporary writ of injunction was issued restraining the defendants from selling the property under the provisions of the trust deed, which temporary injunction was thereafter, in the following January, on application of the defendants, dissolved at the time they filed their answer and counterclaim.

A replication to the answer and counterclaim was filed by the plaintiff, and upon the 7th of June, by agreement of parties, the cause was referred to a referee, with authority to take testimony and proofs offered in behalf of both parties, and report the same, together with his findings of fact thereon, at the next regular term of court. The order further provided that the plaintiff should have until the 15th day of July, 1889, to present its evidence in chief; the defendants until the 15th day of August, 1889, to present their evidence in chief; and the plaintiff to have from the 15th of August till the 1st of September to introduce rebuttal evidence.

At the time designated for beginning the taking of testimony in behalf of plaintiff, the latter applied to the referee

for a continuance, as it was not then ready to proceed. This application was denied by the referee on the ground that, under the order of reference, he had no authority to grant it. The plaintiff then began to introduce testimony, but, upon an objection interposed by the counsel for defendants, the referee refused to hear any testimony by the plaintiff, on the ground that the facts set forth in the complaint did not constitute a cause of action, although the defendants seem not to have made that point. The referee then proceeded to take the testimony offered by defendants in support of the matters set up in their counterclaim, and in due time filed the same and reported his findings of fact to the court, to the effect that the defendants were entitled to a judgment of $4,000 damages against the plaintiff upon their counterclaim, by reason of the failure of plaintiff to work the mine in mine fashion and properly timber the same, as it agreed to do as a part of its contract with the defendants when the notes and trust deed were given.

At the following term of court plaintiff filed its motion for a rehearing, or new trial, and its exceptions to the report of the referee on various grounds. This the court overruled, and ordered the report and findings of the referee to stand ratified and confirmed, and at once proceeded to render judgment against the plaintiff upon said report, in favor of the defendants, for $4,000 and costs.

Before the judgment was rendered, however, when the court, in its opinion given upon deciding the motion for a rehearing, indicated that the report would be confirmed upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and that the judgment of the referee thereupon coincided with the opinion of the court, the plaintiff asked leave to amend the complaint to coincide with the views of the court, so that the complaint, when amended, should contain facts sufficient to constitute a cause of action ; but the court refused to allow amendments to be made, and entered the judgment, notwithstanding such application.

Messrs. PATTISON, EDSALL & HOBSON and Mr. E. E. WHITTED, for plaintiff in error.

Mr. H. M. HOGG, Messrs. PENCE & PENCE and Mr. GEORGE P. COSTIGAN, JR., for defendants in error

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The principal errors assigned and argued by plaintiff in error are : *First*, that the referee erred in refusing its application for a continuance; *second*, that under the order of reference, which was merely that the referee should take all the testimony offered by both parties and report his findings of fact thereon to the court, the referee was without jurisdiction, and acted contrary to his authority in assuming to determine an issue of law, and in holding that the complaint did not state facts sufficient to constitute a cause of action, and by refusing to permit any testimony in support thereof to be introduced; *third*, that the court erred in confirming the report and findings of the referee ; *fourth*, that the court erred in refusing to allow the plaintiff to amend its complaint, and in refusing to set aside the report of the referee, and in not allowing a new trial to be had; *fifth*, that the counterclaim, as well as the evidence in support thereof, was insufficient to justify the finding of fact that the defendants had suffered damage to the extent of $4,000 by reason of the alleged improper working of the mine by plaintiff.

As to the first error assigned, we are satisfied that under the order of reference the referee had no power to grant the continuance asked by the plaintiff. The order of reference was not general. When a referee is given power to determine issues of law and fact, it has been held that his powers as to that case are coextensive with those of the court. But this order of reference was limited, and thereunder the only power of the referee was to take testimony during the times specified in the order, and report his findings of fact thereupon in accordance therewith. *Reever v. White*, 8 Utah, 188.

As to the contention that the referee had no power to pass upon the sufficiency of the complaint, we are of opinion that, under the order of reference, no such power was given to him; but the question is whether or not his exercise of such function is one by which the plaintiff was prejudiced, and whether it is sufficient ground for a reversal of the judgment.

The defendants in error strenuously contend that even though such ruling upon the issue of law by the referee was error, nevertheless, as in the judgment of the court the complaint was insufficient, the rulings of the court approving the findings of fact of the referee, as well as his findings upon the issue of the law, were, in result, the same as if the case had been tried before the court without the intervention of the referee, and that such ruling of the court cannot now be disturbed. The confirmation of the referee's report was confessedly made because of the insufficiency of the complaint; though the record, unless it be by inference, does not show what, in the opinion of the court, was the defect in the pleading.

It is unquestionably true that the granting or refusing of an amendment to a pleading is within the legal discretion of the trial court, which discretion will not be interfered with by a court of review unless it has been abused. It is argued by the defendants in error that when the court dissolved the temporary writ of injunction, its ruling was based upon the insufficiency of the complaint. We are favored with the written opinion of the judge upon the application of the defendants to dissolve, from which it appears that the ruling of the court was based upon two propositions: *First,* that the injunction was improperly granted, because a notice of *lis pendens* filed by the plaintiff in the office of the county clerk and recorder where the property was situate would have been entirely sufficient to protect plaintiff's interests, and would have accomplished the same purpose as would the injunction; *second,* that the cause of action stated in the complaint was one in equity, viz. for a rescission of the

contract on the ground of fraud, and that injunctive relief restraining the defendants from a sale of the mine in question under the terms of the trust deed which, it was alleged, had been fraudulently given, and was not the act of the plaintiff company, ought not to be granted, for the reason that the cause of action was based upon a rescission of the contract, thus disaffirming the contract, and such relief could be granted and was proper only in case the plaintiff affirmed the contract, and sued for damages, and where the complaint by other allegations made it proper and equitable, under the circumstances, to prevent a cloud being cast upon plaintiff's title, or to preserve the property, pending the suit, to be applied to the satisfaction of any judgment the plaintiff might recover.

We have no hesitation in saying that the ruling of the court in dissolving the injunction was correct for the two reasons given; but a careful reading of the opinion of the district judge satisfies us that there was no intimation by him at that time that the complaint did not state facts sufficient to constitute a cause of action, the object of which was to obtain a rescission of the contract; and the subsequent act of the court in referring the cause for evidence to be taken would have been entirely useless had the court been of the opinion that the complaint was insufficient, and the court would probably not make a needless order. So the entire argument of defendants that plaintiff at that time was advised that its complaint was insufficient and that it was guilty of *laches* in not sooner applying for leave to amend its complaint is untenable; and inasmuch as no objection in the way of demurrer was interposed by the defendants, and the record not disclosing in any way that the alleged insufficiency of the complaint was brought to the attention of the plaintiff until the referee assumed to pass upon it, we cannot say that the application of the plaintiff for leave to amend, even at the time it was interposed, came too late.

But the power of the referee, under the order of reference, which was his sole authority in the premises, was limited to the taking of all the evidence offered by both parties, and

the reporting of findings of fact. Hence the referee should have permitted the plaintiff to introduce evidence in support of its complaint, and have reported to the court the evidence taken, together with his findings of fact thereon, and left to the court the decision of any legal questions as to the sufficiency of plaintiff's pleading; and he should not have assumed to himself the authority to determine questions of law. By so attempting, he was going beyond his power just as clearly as he would have done had he favorably entertained the application of the plaintiff for additional time to take testimony.

While this court is loath to review and reverse a ruling of the lower court in a matter where it acts upon its legal discretion, yet when it appears that there has been an abuse thereof, such as this record discloses, it is the duty of this court so to declare.

We have examined the complaint with some care, and find it contains a sufficient statement of a cause of action for the rescission of the contract, with the possible exception that it does not state with sufficient particularity that the plaintiff was legally damaged by the alleged misrepresentations and deceit of the defendants. In such an action there must be alleged " the telling of an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition, and his altering his condition in consequence, whereby he sustains damage." _Watson v. Poulson_, 15 Jurist, 1111; _Ming v. Woolfolk_, 116 U. S. 599.

The allegations of deceit and other necessary averments, with the exception noted, are sufficiently explicit; and if to the complaint there should be added the statement that the plaintiff sustained damages therefrom, the pleading would be sufficient, if sustained by the proper proof, to warrant the court in rescinding the contract of purchase. This amendment to the complaint should have been allowed, and it was, under the circumstances of this case, an abuse of discretion to refuse leave to make it.

It is alleged in the counterclaim that the original contract

of sale was, by mutual agreement of the parties, modified, whereby, at the request of the vendee, it was given an extension of time for the payment of the balance of the purchase price, which agreement of forbearance was evidenced by the notes and deed of trust which the plaintiff in its complaint represents as fraudulent. .

As a part of this subsequent agreement, and as the consideration for this extension of time, the counterclaim further alleges that the vendee agreed to work the mine in mine fashion until the full indebtedness was paid. A breach of this contract by the plaintiff is alleged, in that the plaintiff improperly worked the mine to the injury of the defendants. There was evidence tending to establish this improper working, upon which the court rendered judgment against the plaintiff for $4,000.

Evidently the court proceeded upon the theory that the measure of damages applicable to this case was the same as though the defendants were in possession of the property, or owners of the inheritance. If, as defendants in error contend, the rule of damages is that applicable where the mortgagee sues for injury to the mortgaged property, the rights of the defendants depend upon the nature of their interest in, or their title to, the property covered by the trust deed. In those states (as in Massachusetts) where a mortgagee takes the legal title to, and, as against the mortgagor, is at once entitled to the possession of, the mortgaged property, for an injury to the inheritance the mortgagee may recover against the mortgagor or a stranger, notwithstanding the security may not be impaired, on the ground that he is entitled to have the property as mortgaged held intact until his indebtedness is fully paid. This is upon the ground that the legal title is vested in the mortgagee, and his right to immediate possession, and when a recovery is had by the mortgagee he must apply the amount thereof upon the debt due. *Byrom v. Chapin*, 113 Mass. 308; *King v. Bangs*, 120 Mass. 514.

In those states (as in New York and New Jersey) where

the mortgagee has merely a lien upon the mortgaged property, he can only recover for the impairment of his security, however much injury may have been done to the land. *Lane v. Hitchcock*, 14 Johns. 213; *Van Pelt v. McGraw*, 4 N. Y. 110; *Gardner v. Heartt*, 3 Denio, 232; *Schalk v. Kingsley*, 42 N. J. L. 32.

In Colorado a mortgagee has only a lien upon the mortgaged property. *P. & A. V. R. R. Co. v. Beshoar*, 8 Colo. 32.

But a trust deed or mortgage with power of sale conveys the legal title to the trustee. *Stephens v. Clay*, 17 Colo. 489; *Reid v. Sullivan*, 20 Colo. 498.

But the right of possession remains with the grantor until a sale for default is made. And just here should be noted the status of this action and of the claim for damages under the counterclaim at the time of the trial. The trustee was properly a party to this action only because he held the legal title, and when the injunction was dissolved, as to him the action should have been dismissed. The controversy thereafter was between the vendor and vendee upon the issues as to the deceit of the owners of the notes, as set forth in the complaint, and as to the breach of the contract by the plaintiff, as set up in the counterclaim. Upon this question of damages, the rule for establishing them should be the same as though there were an independent action brought by the owners of the note for an injury to the property which was security for the payment of the debt.

This cause of action for damages grows out of a breach of contract whose consideration on the part of defendants was the extension of the time of payment, but its performance does not purport to be secured or to be enforced by the trustee by any power given him by the trust deed. It was not one of the conditions of the trust deed, for default in the performance of which the trustee might declare a forfeiture, or divest the equitable title of the property still remaining in the plaintiff company. It was one accruing to the vendors, and not to the trustee.

The only remedy of the defendants, who were the owners of the note, was to sue for damages for nonperformance.

The naked legal title to this property was in the trustee, but he had no concern with this contract with the plaintiff as to the working of the mine, nor could he sue for its breach. He held the legal title in trust,—the equitable title, or equity of redemption, being in the debtor,—and his trust was for the benefit of both the debtor and the creditor. Upon the payment of the notes he must reconvey the property to the debtor. If they are not paid according to the agreement, then, upon the application of the payees, he must sell the property, and apply the proceeds in accordance with the directions contained in the deed of trust.

The payees may, or may not, acquire the legal title to the property at the sale. Their only interest therein is by way of security for their claim. If that security is not impaired, they suffer no damage, although the land itself may become of less value by reason of the wrong complained of. The trustee is the holder of the legal title; but the beneficiaries have only an equitable interest or lien upon the property and stand in the same relation thereto as would a mortgagee. Neither has any legal title thereto. Both have only a lien upon the property as security for their debt. Until they have a right to the possession of, or buy in, the property, they can recover for injuries to it only to the extent that their security is impaired. At the time of this trial the situation was such, so far as the evidence shows, that nothing more could be recovered by the defendants than to the extent of the impairment of their security.

" The action must rest upon proof that before the alleged injury the mortgaged premises were of sufficient value to pay plaintiff's mortgage, or a part of it, and that, by reason of such injury, they became inadequate for that purpose." *Schalk v. Kingsley, supra ;* 1 Jones on Mortgages, sec. 454.

But there is an entire absence of proof as to this.

But if the Massachusetts rule adopted by the trial court was proper, the evidence was insufficient to sustain the judg-

ment.   Under that rule the injury to the land is the measure of damages, but the cost of repairing the workings is not necessarily the measure of that injury.   Plaintiff's development of the mine, aside from the improper work, to repair which would cost $4,000, might still enhance the value of the property more than that amount; but the evidence is insufficient to enable us to determine this.

For the reasons given, the cause should be reversed and remanded for further proceedings in accordance with this opinion.

*Reversed.*