VILLAGE OF WEST MILWAUKEE, Respondent, vs. BERGSTROM
MANUFACTURING COMPANY and another, Appellants.

*December 9, 1942—January 12, 1943.*

138

*Heber H. Pelkey* of Appleton, for the appellants.

For the respondent the cause was submitted on the brief of *Allen J. Busby,* village attorney.

FRITZ, J.   Defendants contend that the trial court was without jurisdiction after December 4, 1939, to enter judgment against the Bergstrom Manufacturing Company because the action against the Company abated at the expiration of three years after certified copies of a resolution of dissolution of the Company were filed with the secretary of state and the register of deeds, on December 2 and 4, 1936, respectively. Defendants' contention in this respect must be sustained. Under the provisions of sec. 181.02, Stats., the Company continued to be a body corporate for the purpose of prosecuting and defending actions, etc., for three years after the filing and recording of the resolution of dissolution.   That

three-year period expired on December 4, 1939; and although this action was commenced against the Company on December 15, 1938, it was not tried until December 29, 1941. As that was after the expiration of the three-year period specified in sec. 181.02, Stats., there was applicable the conclusion stated in *State ex rel. Pabst v. Circuit Court,* 184 Wis. 301, 306, 199 N. W. 213, that,—

it "ceased to exist. It had no function to perform; it could perform no function. . . . The corporation being defunct and without legal existence, all actions against it abated."

Consequently, the court erred in entering judgment for recovery from also the Company, instead of sustaining its plea in abatement. However, in so far as the court, in connection therewith, decided that the Corporation still remained in the case for the purpose of any response which equitably may be required of it, its conclusion is in accord with the further statement in *State ex rel. Pabst v. Circuit Court, supra,* that—

"the debts of the corporation, if any, were not extinguished because the corporation ceased to exist."

Although that was said in connection with the proposition that "the creditors of the corporation may follow its assets into the hands of the stockholders, who may be required to respond to the extent of their distributive shares thereof," and in the case at bar that particular factual situation does not exist in that plaintiff is not seeking to follow the Company's assets into the hands of its stockholders, there is, nevertheless, in effect, a substantially similar basis for holding that the debt of the dissolved Company to plaintiff has not become extinguished and that it, as such creditor, may follow its debtor's property into the hands of the Corporation if, as plaintiff contends, the property was either transferred to the Corporation to be applied by it so far as is necessary to the payment of the Company's indebtedness, including plaintiff's demand, so that the Corporation equitably may be required to so apply the property; or was transferred to the Corpora-

tion for the purpose of hindering, delaying, and defrauding plaintiff, without the Company receiving fair value or equivalent for its property and leaving it without any funds or property with which to pay its debts. In these latter respects a review of the evidence in relation to the transfer discloses that the court was warranted in finding the following facts.

On November 28, 1936, the Company's indebtedness was $244,468.61; the book value of its assets was $242,582.93; but the fair value thereof to the Company if it had continued in business, would have been substantially higher. The Company, being so indebted, and also indebted to plaintiff for the tax item of $131.98, and accrued interest and charges, transferred and conveyed all its property, including $2,564.51 in cash, to the Corporation without receiving fair value or a fair equivalent therefor, for the purpose of hindering, delaying, and defrauding the plaintiff and other creditors; and thereby rendered the Company utterly insolvent and without any funds or property with which to pay its debts, including plaintiff's demand. All property so transferred is now in the possession and under the control of the Corporation, and by the transfer the Corporation reorganized or absorbed the Company and its assets, asserting a pretended consideration, which in fact did not exist, and would not be a fair consideration, in that it was not paid or disposed of in good faith, and did not constitute a fair equivalent for the property or assets transferred or conveyed. The court concluded that plaintiff is entitled to judgment declaring the transfer to the Corporation fraudulent as against plaintiff, as a creditor to the extent necessary to satisfy its claim in suit; and that so far as necessary to that extent plaintiff is entitled to judgment that the transfer and conveyance from the Company to the Corporation are ineffective and are thereby set aside as against plaintiff.

Appellants contend those conclusions cannot be sustained because plaintiff failed to prove that the Corporation did not pay a fair consideration, as defined in sec. 242.03, Stats., for

the assets of the Company; that unless a creditor can show a failure to comply with the law as to fair consideration and fair intent, he cannot set a transfer aside merely because of insolvency and loss to himself; and that although under sec. 242.03, Stats., as construed in *Angers v. Sabatinelli,* 235 Wis. 422, 435, 293 N. W. 173, 128 A. L. R. 1491, executory promises by a grantee to pay the balance of the purchase price, which are not in the form of negotiable instruments and already negotiated to holders in due course, are excluded from the definition of fair consideration, that case does not hold that when a purchaser pays cash and assumes obligations and notes already in the hands of third parties, the payment of such cash and assumption of liabilities cannot be considered as determining whether or not fair consideration was paid.

On the other hand, plaintiff contends that as the records of the transaction in respect to the alleged debts of the Company claimed to have been assumed were neither shown nor produced notwithstanding a demand for them they cannot be deemed to constitute fair consideration in view of sec. 242.03, Stats., as interpreted in the *Angers Case, supra,* viz.,—

"that sec. 242.03, Stats., means to exclude from the definition of fair consideration such executory promises by the grantee to pay the balance of the purchase price as are not in the form of negotiable instruments and already negotiated to holders in due course."

And that consequently the evidence precludes any other finding than that the transfer was without the Company receiving fair value or the equivalent therefor, and was made for the purpose of hindering, delaying, and defrauding plaintiff and other creditors. In thus contending the plaintiff relies upon the following matters. The alleged assumption of the Company's debts by the Corporation on November 28, 1936, was in the form of an offer to purchase made by the Corporation acting through its president, James W. Bergstrom, and a resolution of acceptance by the Company,

all of whose stock was owned by Bergstrom. But no record specifying any particular debt claimed to have been assumed was shown or produced by defendants, although demanded by plaintiff, and because of defendants' failure in this respect it can be inferred, as the court did, that if such evidence had been produced it would have exposed facts unfavorable to defendants. Under the circumstances and conditions in this case, there was applicable the rule that,—

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." 1 Wigmore, Evidence (2d ed.), sec. 285; *Booth v. Frankenstein*, 209 Wis. 362, 370, 245 N. W. 191; 20 Am. Jur. pp. 188–190, secs. 183, 184.

Included in the assets, amounting to $242,582.93, which were transferred to the Corporation, there were $2,564.51 on deposit in the bank to the Company's credit. On a check issued by the Corporation to the Company, it received out of that deposit $1,148, which were used to pay some of its indebtedness. But, as the transfer left the Company without any assets to pay its indebtedness to plaintiff it was then insolvent under sec. 242.02, Stats.; and its insolvency was admitted in Bergstrom's testimony. As the Corporation's check for $1,148 to the Company was honored by the use of part of the Company's cash bank balance of $2,564.51, which was included in the assets transferred to the Corporation, the retransfer of the $1,148 to the Company cannot be deemed to constitute a fair consideration under ch. 242, Stats.

It follows that as neither the payment of the $1,148 to the Company by the Corporation's check, which was honored by using part of the Company's cash bank balance that it transferred as part of the transaction to the Corporation, nor the assumption of indebtedness of the Company by the Cor-

poration's executory promises, which were not in the form of negotiable instruments and already negotiated to holders in due course constituted fair consideration for the transfer, the court was warranted, in view of its findings and conclusions in these and the other respects stated above, in holding that the transfer was made without the Company receiving fair value or a fair equivalent therefor, and was for the purpose of hindering, delaying, and defrauding the plaintiff; and that as the Company was thereby rendered insolvent and left without any property or funds to pay its debt to plaintiff, the latter was entitled to judgment declaring the transfer fraudulent and void and setting it aside to the extent necessary to satisfy the plaintiff's claim.

*By the Court.*—Judgment modified in relation to the Bergstrom Manufacturing Company by sustaining its plea in abatement in accordance with the opinion; and affirmed in all other respects, with costs to plaintiff.

BARLOW, J., took no part.