276 F.2d 714
 60-1 USTC P 9399
 UNITED STATES of America, Appellant,
v.
Mrs. Sybil Mae FLOERSCH, formerly Mrs. Sybil M. Benton,
individually; and A. J. Floersch and Bank of New
Mexico, as Executors under the Last Will
of William E. Benton,
deceased, Appellees.
 No. 6182.
 United States Court of Appeals Tenth Circuit.
 March 21, 1960.
 
 John J. Pajak, Washington, D.C., (Charles K. Rice, Asst. Atty. Gen. and Lee A. Jackson, A. F. Prescott, Fred E. Youngman, Attys., Dept. of Justice, Washington, D.C., on the brief), for appellant.
 Derwood Knight, Albuquerque, N.M. (William J. Sullivan, Albuquerque, N.M., on the brief), for appellees.
 Before HUXMAN, PICKETT and BREITENSTEIN, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment in favor of the plaintiff, the appellee here. The appellee instituted this action to recover income taxes and interest which she paid under protest. The assessment against her was as a transferee of assets of her former husband, now deceased. On March 15, 1951, Mrs. Sybil Mae Floersch and her then husband, William E. Benton, residents of New Mexico, filed their joint income tax return for the year 1950. Benton died May 12, 1953. His estate was probated and closed in due course of time. Her husband's one-half interest in their community property, having a market value in excess of $71,000, was transferred to her without consideration. Considering Benton's indebtedness to the United States for the income tax subsequently assessed, the transfer of his one-half interest in the community property to the appellee rendered his estate insolvent.
 
 
 2
 On March 17, 1957, a statutory notice of deficiency was mailed to Mrs. Floersch by the District Director of Internal Revenue notifying her, pursuant to Section 311 of the Internal Revenue Code of 1939, 26 U.S.C.A. 311, that,
 
 
 3
 '* * * the determination of income tax liability of Mr. William E. Benton for the year ended December 31, 1950, discloses a deficiency of $51,622.28 in income tax as shown in the statement attached. The amount of the deficiency stated, plus interest as provided by law, constituting your liability as Transferee of the assets of said William E. Benton will be assessed against you.'
 
 
 4
 More than five years had passed from the date of the filing of the return so no assessment could be made against his estate even if the transfer of his one-half of the community property by will to his wife had not left his estate insolvent. But the assessment against her as transferee was made within the additional year provided for by Section 311(b)(1) for assertion of transferee liability.
 
 
 5
 Appellee paid the tax and penalty interest under protest and then instituted this action to recover the same. In her complaint, she challenged the validity of the assessment. But as the summary judgment was based on the sole ground that since she was primarily liable for the tax she could not be liable as a transferee, the merit of her assertion of invalidity of the assessment is not before us for determination.
 
 
 6
 In Paragraph 5 of its answer, the Government alleged that, 'Pursuant to the provisions of said William E. Benton's will, assets of his having a market value in excess of $71,000 were transferred without consideration to the plaintiff, Mrs. Sybil Mae Floersch, and considering said William E. Benton's indebtedness to the United States, said transfers rendered his estate insolvent.' The motion for summary judgment admits the truth of these allegations. In fact, appellee does not contend that she holds these assets otherwise than under her deceased husband's will, nor could she so contend because under the New Mexico law, a husband may, as her husband here did, dispose of his interest in the community property by will.[1] Neither is it contended that there remained assets in his estate sufficient to pay this additional tax. The determinative question is, being a legatee, is she liable under federal law for this tax as a transferee?
 
 
 7
 The Federal Statute does not define transferees within the meaning of section 311(a). Section 311(f), among others, includes in the classification of a transferee, 'heirs, legatees, devisees and distributees.' The term, however, has a well defined meaning and has been judicially defined as follows: A 'transferee' within the meaning of 311(a) is one who takes or receives property of another without full, fair and adequate consideration to the prejudice of creditors.[2] Appellee is a transferee of the assets she received by will of her deceased husband under Section 311(f), which includes in the classification of transferee, 'heirs, legatees, devisees and distributees.'
 
 
 8
 Section 311(a)(1) imposes upon a transferee, for the purpose of collecting taxes due from a transferor, 'The liability, at law or inequity, of a transferee of property of a taxpayer, in respect of the tax * * *.' The federal law does not define the liability of a transferee other than stating that it is the liability at law or in equity. We look to the state law to determine what the liability of a transferee for the debts of the transferor is. This subject was fully explored and discussed by the Supreme Court in the late case of Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126. The effect of the decision is that if, under state law, the assets of a transferor, who becomes insolvent by virtue of such transfer, can be reached in the hands of his transferee by his creditors, they can be reached by the federal government for the purpose of subjecting them to the tax liability of the transferor. Under 29-1-9, New Mexico Statutes, 1953, these assets in the hands of the appellee are subject to the claims of creditors of the deceased husband, and are, therefore, subject to the government's tax claim unless barred by other principles of law.
 
 
 9
 It is well settled that the government may proceed against property in the hands of a transferee after it has lost its right to proceed against the taxpayer, providing it proceeds within the additional year specified in the Statute.[3] As indicated, this proceeding was instituted within the additional year.
 
 
 10
 Appellee, in her brief, speaks of secondary liability and seems to be of the view that secondary liability and transferee liability are the same, and covered by the same principles of law. There is no relation between secondary liability, as ordinarily understood, and transferee liability. Secondary liability is a personal liability which attaches when the remedy against the one primarily liable has been exhausted. It is a personal liability which may be satisfied from all the assets of the one secondarily liable. Transferee liability, on the other hand, imposes no personal liability. It subjects only the property in the hands of the transferee to the debts of the transferor. It is a proceeding in rem against the property or fund which the transferee received from the transferor burdened with his debts.[4]
 
 
 11
 Had appellee not been the wife of the deceased taxpayer, and jointly and severally liable for the tax in question, obviously, under the facts of this case, she would be liable to the extent of the value of the property that she has received from him as a transferee, notwithstanding the fact that the government had lost the right to proceed against him or against his estate because of the lapse of time. So also, if an action against her as one primarily liable for the tax had not been lost by the lapse of time, what principle of equity would prevent the government from ignoring her personal liability and seek only to subject, to the satisfaction of its claim, the property of his which she held in the nature of a trust fund? Why should the law be otherwise merely because the government has lost its right to proceed against her directly? She is still a transferee and as such has in her possession property subject to the claims of the deceased husband's creditors. Her liability to respond as a transferee stems from the fact that she holds property as a transferee in which his creditors have an interest because the transfer results in his insolvency.
 
 
 12
 Such cases as Oswego Falls Corporation, 26 B.T.A. 60, and Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126, do not sustain appellee's contention that one may not be both primarily liable and liable as a transferee. In the Oswego Falls case, three existing corporations were merged into a new corporation which took over all the assets of the three now defunct corporations. Under New York law, the transferee corporation became liable for all debts of the transferor corporations irrespective of the value of the assets transferred. All that was decided was that under New York law, there was absolute liability for all debts of the merged corporations enforceable in the same manner as though the new corporation had itself incurred the obligations. In the Stern's case, were involved the proceeds of a life insurance policy of a taxpayer who died insolvent owing the federal government income taxes. His wife was the beneficiary and received the proceeds of the policy. The government sought to reach these funds in her hands as a transferee. While the Supreme Court did not decide whether she was a transferee, the effect of the decision is that even if she were a transferee, the government could not reach these funds for the satisfaction of his debts. The basis of the decision was that under Louisiana law, the creditors of his estate could not reach these funds, and, therefore, the government could not reach them under the transferee statute. Neither of these cases in our opinion, supports the contention that transferee liability may not be asserted against one having received assets by transfer, without full consideration, merely because the transferee may also be primarily liable.
 
 
 13
 It is our conclusion that the government may proceed against the fund appellee holds as a transferee, notwithstanding it has lost its right to proceed against her personally as one liable for the entire tax.
 
 
 14
 Because the merits of appellee's assertion that the assessment of the deficiency tax and interest was erroneous was not reached nor considered by the summary judgment, the case is reversed and remanded for the determination of that issue.
 
 
 15
 Reversed and remanded.
 
 
 
 [1]
 29-1-9, New Mexico Statutes, 1953
 
 
 [2]
 First National Bank of Chicago v. Commissioner, 7 Cir., 255 F.2d 759, 762
 
 
 [3]
 City National Bank v. Commissioner, 5 Cir., 55 F.2d 1073; Flynn v. Commissioner, 5 Cir., 77 F.2d 180
 
 
 [4]
 Commissioner of Internal Revenue v. Henderson's Estate, 5 Cir., 147 F.2d 619; Harrison v. Commissioner, 5 Cir., 173 F.2d 736